Hill *v.* Beach.

12   31
49   338
12   31
55L  546
12   31
52   631

12   31
63   292
63   506

## ANTHONY I. HILL *vs.* THEODORE BEACH and others.

Where the statement of facts in the bill are broad enough to give the complainant a right to relief, it matters not how narrow the prayer may be, if the bill contains a prayer for general relief.

And although the complainant may claim a relief not at all warranted by the facts, or may be entitled to a relief upon very different principles of equity from what he supposed, such a misapprehension of his case cannot defeat his right to relief.

Certain persons entered into an agreement with a view to form a company to carry on the business of quarrying at a quarry situate at Belleville, in Essex county, in this state. They then undertook to form themselves into a corporation under the general act of the legislature of the state of New York, passed 14th February, 1848, and complied with its forms.

*Held,* that such company would not be recognised by the courts of this state as a legally constituted corporation.

*Held further,* that such persons doing business in this state, under such assumed corporate capacity, will be treated as, and held to the responsibility of partners, both in courts of law and equity.

In the distribution of partnership effects, the equities between the partners themselves will have priority over any claims of the private creditors of either of the partners.

A partner who advances moneys to pay the debts of the firm has a lien upon the assets paramount to any lien which a creditor of one of the partners has upon such member's interest.

The complainant was the grantee of certain real estate in trust for the firm. The bill alleges that he had made advances of moneys to one of his copartners, who had pledged to complainant his right and interest in said real estate as security for said advances.

*Held,* that as this bill put the right of recovery solely on the ground that the trust estate was pledged as security for the debt, the complainant could not claim a lien on the partnership assets superior to the claims of the separate creditors, by showing that the moneys advanced went into the partnership. The reply to such claim is, that there is no such equity stated in the bill.

If one partner make advances for another partner, on account of his interest in the partnership, the individual partner is his debtor, and not the firm. As between himself and his debtor, he may have an equitable lien upon the latter's interest in the firm to reimburse himself; but he can have no equity which will give priority over the other separate creditors of his debtor.

*Prima facie,* the holder of a written agreement is entitled to the benefit of it, and if the attempt is made to destroy its validity by showing a non-delivery, the proof must not leave the matter in doubt.

It has been frequently settled, that a separate creditor of one partner can attach that partner's interest in any partnership property.

The land held in trust for the firm was sold under a mortgage, and the surplus money, before it was brought into court, was attached while in the hands of the sheriff by a separate creditor of one of the firm.

*Held,* that the money was attachable under the above circumstances.

This case is not within the principle of the decision in *Shinn* v. *Zimmerman,* 3 *Zab.* 150. The authorities in that case reviewed.

*John Whitehead* and *J. P. Bradley,* for complainant.

*W. S. Whitehead* and *Asa Whitehead,* for defendants.

THE CHANCELLOR. On the 1st of December, 1853, Horace Andrews, of the city of New York, entered into a contract for the purchase of a farm, upon which there is a valuable stone quarry, situate at Belleville, in the county of Essex, for which he agreed to pay twenty-seven thousand dollars. On the 13th of the same month, the complainants, Horace Andrews, John Pendleton, Peter W. Rouse, and Charles S. Andrews, entered into the following agreement, under their respective hands and seals.

"This agreement, made this thirteenth day of December, 1853, by and between Anthony I. Hill, John Pendleton, Peter W. Rouse, Horace Andrews, and Charles S. Andrews, witnesseth, whereas said Horace Andrews has entered into a contract with one Henry Ferris, to purchase his certain farm and stone quarry, in the township of Belleville, and state of New Jersey, for the sum of $27,000, payable as follows: $6000 on the execution of said contract, $5000 on the 15th day of January, 1854, $3500 on the 1st of March, 1854, $3500 on the 1st of May, 1854, and the remaining $9000 in equal payments, at one, two, and three years, from December 1st, 1853, with interest at six per cent. on the whole amount from the first day of December. Now, in consideration of the premises, and of the mutual covenants of the parties hereto, and of the sum of one dollar, by each to the other in hand paid, the parties agree to take each an interest of one-fifth in said contract with Ferris, and to furnish their

respective proportions of the purchase money, as the same is called for by the terms of said contract. And it is further agreed to contribute equally to a capital of $23,000 for opening and working said quarry, as the same shall be needed from time to time in the judgment of a majority of the parties hereto, or of the trustees of the company, in case a company shall be formed for working said quarry; and it is further agreed that none of the parties will sell or dispose of his interest aforesaid, or any portion thereof, until said sum of $23,000 shall have been expended for the purpose above named, without the consent of all the other parties previously obtained."

On this agreement Horace Andrews made an endorsement, that he would agree to hold his contract with Ferris, and any title which he might thereby acquire, subject to the direction of a majority of the said parties to the agreement.

The parties to the agreement then undertook to form themselves into a body politic and corporate, under an act of the legislature of the state of New York, entitled, "An act to authorize the formation of corporations for manufacturing, mining, and chemical purposes, passed February 17th, 1848." They signed and acknowledged the certificate required by law, and filed it in the proper office. The name assumed was "the Belleville Quarry Company."

There was paid to Ferris, on account of the purchase money of the farm and quarry, $10,097.42, which sum was advanced proportionably by the parties to the agreement. By an arrangement of all interested, Ferris conveyed the premises to Horace Andrews; and, on the 7th of March, 1854, the latter executed a mortgage to Ferris to secure twelve thousand five hundred dollars, the balance of the purchase money. At the request of all the parties, the said Horace Andrews, on the 23d of June, 1854, conveyed the premises to the complainant. It was the understanding, when the company organized, that

the property should be conveyed to " the Belleville Quarry Company," but the arrangement was changed, and the deed made to the complainant, in consequence of doubts being entertained whether a company so organized could hold land in its corporate name. *Rouse* sold out his interest to the other four parties to the agreement, who, each of them, thus became entitled to one-fourth interest in the concern. The parties then commenced business at Belleville, at the quarry, and carried it on under the name they had assumed as their corporate name.

There being a default in the payment of the purchase money, the mortgage was foreclosed, and the property sold by the sheriff. After paying the mortgagee his money on the decree, there remained a surplus in the sheriff's hands, which he paid into this court, of $3880.28.

The foregoing facts are stated in the bill, and are sufficiently established by the evidence.

The complainant claims that, upon these facts, he is entitled to one-fourth of the surplus. He claims further, that the company is largely indebted to him for advances, and that he is entitled to have that amount paid to him out of this surplus. He further claims, that Horace Andrews is indebted to him in a large sum of money, and that he is entitled to have this amount out of the one-fourth part of the said surplus belonging to said Andrews.

The bill is filed against the three parties interested with the complainant in the company, against " the Belleville Quarry Company," and the firm of Stephens, Condit & Co., as creditors of the company, Theodore Beach, as claiming an assignment of the interest of Horace Andrews and Charles S. Andrews, and against Mançur M. Backus and George Bliss, as attaching creditors of Horace Andrews.

The bill asks that the equities of all the parties may be settled, and the surplus money distributed accordingly.

The only opposition to the complainant's claim is made by three of the defendants, Beach, Backus, and Bliss.

They do not object to his right to one-fourth of the surplus, but resist his claim for advances to the company, and also that which he makes upon the interest of the one-fourth belonging to Horace Andrews. The complainant not only insists upon the validity of the claims which he sets up, but he opposes those of the defendants named—Bliss's, upon the ground that his assignment is not legal, and those under the attachment, because, as he alleges, the property, or rights of Andrews, are such as are not the subject of attachment.

The defendants start a preliminary objection. They insist this bill should be dismissed, because it is filed against " the Belleville Quarry Company," when no such corporation has a legal existence ; and if it did exist, it is said, no settlement of the affairs of the company is asked for ; and as the complainant is not entitled to his individual interest as a stockholder until such settlement is effected, he is not entitled to any relief which is consistent with the frame of his bill.

The complainant states, in his bill, all the facts which have any bearing upon his legal or equitable rights to any part of the surplus money in court. If, then, he cannot maintain this suit, he cannot maintain any in this court upon his claim. If the facts which he states are broad enough to give him relief, it matters not how narrow his prayer may be, if his bill contains a prayer for general relief. And although he may claim a relief not at all warranted by his facts, or may be entitled to a relief upon very different principles of equity from what he supposed, such a misapprehension of his case cannot defeat his right to relief. I think the position taken by the defendants' counsel correct, that " the Belleville Quarry Company" cannot be recognised by any court in New Jersey as a legally constituted corporation, nor be dealt with as such. If it can be, what need is there of any general or special law in our state ? Individuals, desirous of carrying on any manufacturing business, may go into the city

of New York, organize under the general laws of that state, erect all their manufacturing establishments here, and, under their assumed name, transact their business, not only free from all personal responsibility, but under cover of a corporation not amenable to our laws. Surely such a company could not be declared an insolvent corporation under our laws to prevent frauds by incorporated companies, and must necessarily act entirely independently of all our statutes respecting corporations.

How, then, is such a body to be regarded and treated by our laws? how is it to be dealt with by our courts? Here are four individuals, who have assumed the name of "the Belleville Quarry Company." They have purchased property in New Jersey, which they have agreed shall belong to this company. Although it does not stand in the company's name, it is held in trust for them. These individuals have carried on business here under this assumed name. They have made contracts, and have contracted debts as "the Belleville Manufacturing Company." They are not a domestic corporation, and cannot be sued as such. They are not a foreign corporation, for it is perfectly manifest, upon the face of their proceedings, that their attempted organization under the general law of New York respecting corporations was a fraud upon the law of that state. These individuals, then, must be treated and dealt with by the law as partners trading under the name they have assumed. Although their object, in taking the name they did, was to avoid personal responsibility, the law will not allow them so to escape. A court of equity, as well as a court of law, will treat them as partners. Regarding the transaction in this light, is not the complainant entitled to relief? To whom does this surplus money belong? Looking at the pleadings and the proceedings in the suit of foreclosure in which this money was brought into court, the complainant is entitled to the whole of it. He was made a defendant in that suit, as holding the equity of redemp-

Hill *v.* Beach.

tion, and there was no other party to the suit who appeared in those proceedings to have any interest in the property. If the complainant had taken the money out of court, he would have held it, as he held the property, *in trust* for himself and his copartners. But in his individual right, he has only a claim to one-fourth part of that money. He now comes into court with his bill, showing all the facts upon which his claim rests. If this is so, there is no reason why the court should not settle his rights, and give him such proportion of this money as belongs to him. It is *surplus money* in this court, and must be disposed of under its order. The complainant says he does not wish to take the whole of it as trustee, but he desires that the rights and equities of all parties may now be settled, and the money distributed accordingly.

What, then, are the complainant's rights as a partner? As such, he has no right to one-fourth of this surplus until the partnership is settled up. He asks this court to declare that one-fourth of this money is his; and as to one other fourth, he makes a claim upon it as a copartner, which will sweep that fourth all away. He shows, by his bill, that the partnership is dissolved; that they have abandoned business, and that their most valuable property has been disposed of. He shows that the partnership matters are unsettled, and he has brought some of their creditors before this court. He further and properly states, in his bill, that whatever amounts may be due to the said creditors, or to any other person, from the said company ought to be first paid to such persons before any distribution of the said surplus is made among the several persons entitled to the same. He asks that it may be ascertained what part of this partnership fund belongs to him absolutely, and that it may be paid to him in his individual right. The very object of the bill is to have all the equities respecting this fund settled, and to have it distributed.

It is evident, then, that the complainant's right in this fund cannot be ascertained until the partnership affairs are settled. That is preliminary to a distribution of the fund.

There must, then, be a reference to a master to settle the partnership affairs. It is proper, however, as the case now stands before the court, and as much evidence has been taken as to the respective rights of the parties, that those rights should be settled, as far as circumstances will admit, in order to save further litigation, and as a guide to the master in taking the accounts.

In the first place, the master must take an account of *all* the assets of the partnership. This is necessary to attain the object in view; for it is impossible to ascertain the respective rights of the partners to the fund in court without an account of all the assets. Although this surplus is the product of real estate, as to the payment of partnership debts, and the adjustment of partnership rights, and winding up of the partnership concerns, it is to be deemed as personal property. *Hoxie* v. *Carr et al.*, 1 *Sumner* 181.

In the next place, there must be an account of the partnership debts. The complainant can have no right to a decree of this court declaring what portion of this fund belongs to him until the joint debts are paid. He is not entitled to any portion of the assets until such debts are ascertained and a settlement made. I am thus precise in mentioning these particulars, because, from the character of the pleadings and from the argument of counsel, it seems to have been taken for granted that this surplus could be disposed of without regarding the affairs of this company beyond this fund. This certainly is impossible.

After the joint debts are paid, then the equities between the partners are to be settled; and they have priority over any claim of the private creditors of either of the partners. How far these equities extend, is an important question in this controversy.

The complainant claims to be remunerated out of the joint assets for about $1500, which he alleges was advanced by him, from time to time, to pay the debts of the partnership. There can be no doubt but that he has lien upon the assets to remunerate himself for such advances. He must be paid before the surplus can be ascertained which is to be divided among the partners, and of course has a preference over any lien which a separate creditor of a member of the firm has upon such member's interest. The separate creditor stands, as to his debtor's interest, in his place and stead, and he is in no respect in any better condition. If, then, Horace Andrews is entitled only to his portion of the surplus after the complainant's advances for the firm are paid, the defendants who claim a lien upon his interest are entitled to nothing more than the debtor. I have not thought it worth while to refer to any authorities for the correctness of these positions. They are laid down in every elementary treatise upon the subject, and cannot be considered as open for controversy.

They are very succinctly stated by Lord Hardwick in *West* v. *Skip*, 1 *Ves.* 242. " The partners themselves are clearly joint tenants in the stock and all effects, not only that particular stock in being at the time of entering into the partnership, but to continue so throughout, whatever changes might be made in the course of trade, otherwise it is impossible to carry it on. And being seized *per my* and *per tout*, when an account is to be taken, each is entitled to be allowed against the other everything he has advanced or brought in as a partnership transaction, and to charge the account with what that other has not brought in, or has taken out more than he ought; and nothing is to be considered as his share but his proportion of the residue or balance of the account. That this is so at law appears from two cases, 2 *Lord Raymond* 871, and *Heydon* v. *Heydon, Sal.* 392, where it was held, that judgment and execution against one partner, for his se-

parate debt, does not put the other in a worse condition ; but he must have all the allowances made him before the judgment creditor can have the share of the other applied to him ; * * * * * then, as between one partner, and the separate creditors of the other, the law and those two c ases before mentioned say, that they cannot affect the stock any further than that partner could whose creditors they are."

Whether, for such advances, the complainant is entitled to come in upon an equality with other joint creditors, or has priority over them, is immaterial, as far as the interest of the present complainant is concerned.

As to the evidence, I think it establishes the fact, that advances were made by the complainant, and that they were made under such circumstances as give him a lien for their payment upon the partnership assets. The amount is an open question before the master.

But there is another claim which the complainant makes—not upon the joint assets, but upon Horace Andrews' portion of the surplus after the partnership matters are settled. This claim amounts to about $1500. As counsel, in their argument, placed the right of recovery to a portion of this claim upon different grounds from the other portion, it is necessary to look at the allegations of the bill, in order to ascertain with precision the ground upon which the complainant rests his demand.

The allegation, as it is contained in the bill, is, that at various times since the organization of the said company, and since the execution of the deed of the premises and quarry by Andrews to the complainant, the said Andrews has become indebted to the complainant, partly for advances of money, and that the said Andrews is now indebted to him in the sum of $1500, or thereabouts, and that the said Andrews has, at various times prior to the date of the pretended transfer or assignment to the defendant, Beach, pledged any estate, title, or interest, which he, the said Andrews, had of, in, and to the said

Hill *v.* Beach.

trust estate in the hands of the complainant as security for the amount of any indebtedness which might be due or coming from him, the said Andrews, to the complainant on account of the said advances or any other account. And the complainant insists that the actual amount of any such indebtedness due and coming to him from the said Andrews is a charge upon the right, title, and interest of the said Andrews in the said trust estate and fund in the hands of the complainant and upon the said surplus money.

It will be observed that the character of the indebtedness is, at best, very indefinitely stated. It is stated as a debt of $1500, *part* of which is for advances. It is not stated how much, or what part of it, is for advances, nor is it intimated for what the residue was contracted. But the right of recovery is put solely upon the ground, that the trust estate was pledged as security for the debt. How the pledge was made—whether in writing or not—is not stated. It is now said, that about $800 of this amount was for money advanced for Andrews, which went into the partnership. It is claimed that, on this account, the complainant has an equitable lien upon Andrews' interest in the partnership to reimburse himself to this extent. The reply to this is, there is no such equity stated in the bill. If the complainant has any lien, it is because the property was pledged as security. This is the ground upon which he placed himself in his pleadings. This is the issue which the defendant has joined with him, and he must stand, if at all, upon the foundation which he has laid for himself.

But is there any such equity as that contended for? One partner has a lien upon the partnership assets for money which he has advanced for the partnership. It is an equity existing between the partners. It is not an equity which creates a lien upon the partnership assets superior to that of the creditors of the firm, whose equities are worked out through the partners. The creditors of the firm must

D*

be first paid before the partner can set up any such equity. Or if such partner who has made advances for the firm is to be looked upon simply as a creditor of the firm, the fact of his being a partner gives his debt no priority over that of other creditors of the partnership. So if one partner makes advances for another partner on account of his interest in the partnership, the individual partner is his debtor, and not the firm. As between himself and his debtor, he may have an equitable lien upon the latter's interest in the firm to reimburse himself, but he can have no equity which will give him priority over the other separate creditors of his debtor. For if a partner has no equity upon the partnership assets to reimburse himself for his advances on account of the partnership which will override the creditors of the firm, how can one partner obtain an equity upon another partner's interest in the firm for an individual debt, although contracted for an advance of money which went into the partnership, which will give him a priority over other creditors? As an individual creditor of his partner, he stands on the same footing with all the other creditors. The fact of his being a partner gives his debt no priority.

In my view, it matters not how, whether in his individual or partnership business, Andrews appropriated the money. He became the individual debtor of the complainant, and the appropriation of the money could not change or give character to the debt.

Is there any pledge proved? Is it proved that this property was so pledged to the complainant as a security for his debt, as to make that debt a lien entitled to priority over another creditor who has acquired a lien at law? Giving full credit to the testimony of Horace Andrews, he but proves this—that he told the complainant he might hold his interest in the property as a security for is debt. Even this promise was not made, except as to the eight hundred dollars before referred to, until after the assignment to Beach, and after the attachment of

Backus. He says, " when I conveyed the quarry property to Mr. Hill, I owed him about $3000; afterwards he made advances towards working up the quarry: when he made these advances, I told him that he had security on the quarry property. Afterwards he asked me if he might hold my interest as security for the whole debt. I told him that he might do so. This last arrangement, I think, was early in 1855, that is when he asked me if he might hold my interest as security for his whole debt. At that time he said he had understood it so from the beginning. I had not so understood it." The assignment to Beach was on the 11th of November, 1854, and the attachment of Backus was prior to the early part of 1855, which the witness speaks of.

This agreement did not give the complainant any lien upon the property, as between himself and the other creditors of Andrews. It merely amounted to a promise, on the part of Andrews, that the complainant should have his pay out of the property. But it may be said it amounts to more than this, because the complainant had the legal title to the property. It is true he had; but he held it only in trust for the partnership. He had not the *possession* of the property. It was partnership property, and for that purpose was personal estate ; so much so, that if either of the parties in interest had died, his interest in the property would have gone to his personal representative, and not his heir. Besides, I do not think, under the circumstances, a court of equity should permit the complainant to derive any advantage from the fact of the property's standing in his name. The attempt of the complainant and his copartners was an unlawful one. It was to carry on business in this state under the assumed name of a body corporate for the purpose of freeing themselves from personal responsibility. The property was covered up in the name of the complainant. The trust was a secret one. It did not appear on the face of the title deeds. The court should regard this property as

the property of the partners, and should give neither of them any advantage over the creditors of the firm or the creditors of the individual partners, from any consideration as to the particular manner in which the title was held. It does not appear to me right, after a creditor of Andrews has obtained a lien upon his interest in this property, that the complainant should be permitted to defeat it, by proving by Andrews that there was a verbal agreement between himself and the complainant, that the latter should hold it as a security for his debt.

So much for the position which the complainant occupies in the suit. We come now to consider the claims of the defendants.

Theodore Beach produces a writing, dated the 11th of November, 1854, which purports, on the face of it, to be an assignment by Horace Andrews to Beach, of all his interest in the agreement of the 13th of December, 1853, to secure Beach for certain endorsements, amounting to $7400, and a note of $800, lent by Beach to Andrews. The paper is signed by Andrews, and is complete on the face of it. It is sufficient for the purpose intended, and gives to Beach, if valid, a lien, or security, upon the interest of Andrews. The only objection made to this paper is, that it was never delivered. It is insisted that it was handed by Andrews to Beach, for the purpose of procuring the consent of the other parties interested with Andrews, and that their consent never was procured, and the paper was not delivered. Horace and Charles S. Andrews both declare that the paper was not delivered. In corroboration of their testimony, we have the facts, that the $800 note, mentioned in the agreement, was never given, and that there is written on the back of the agreement a consent to the assignment, to be signed by the complainant and his associates, which remains unexecuted.

The consent of the complainant to the assignment was not necessary to give it validity between the parties. If

such an instrument was a breach of the agreement between Andrews and his associates, still the want of their consent did not affect the title of Beach to the interest assigned him. Nor is the not giving of the $800 note inconsistent with the fact of the delivery of the agreement. Even if Andrews had refused to deliver the note, it would not affect the delivery. It would stand good as security for the endorsements. But these facts are some corroboration of the witnesses, and are entitled to consideration. Although these witnesses are competent witnesses, their evidence is not to be regarded by the court as entitled to the weight of disinterested witnesses. Beach produces the agreement. *Prima facie*, he is entitled to the benefit of it. If the complainant undertakes to destroy its validity, he must not leave the matter in doubt. Beach, in answer to the testimony of Andrews, produces a witness, who, if he states the truth, destroys their testimony entirely. He says, after their property was converted into money, and the surplus brought into court, he had a conversation with both Horace and Charles S. Andrews ; that it was principally relating to the assignment of their interest to Beach ; that they said, both of them, that they were particularly anxious Beach should have the avails of their interest in the quarry ; that they mentioned that they had made an assignment of their interest to him, and they were anxious he should have his pay ; that Horace stated the amount of the proceeds of the sale, and some other assets belonging to the concern, to be about $7000. The witness goes on to state other particulars, which present his testimony in a very favorable light. If what he states is true, the delivery of the paper was complete. The parties also understood it. I must, therefore, declare the assignment to be valid, and a good security upon both Horace and Charles S. Andrews' interest in this surplus.

The objection made to the attachment of Backus is— that the interest which Horace had in the quarry property

was not of a character which could be legally attached. That the separate creditor of one partner may attach that partner's interest in any partnership property, cannot be doubted. It has been repeatedly settled that such interest may be assigned, or taken under attachment or execution. The great difficulty has been how the property, when levied upon, should be disposed of, not whether it was the subject of levy. *Matter of Smith*, 16 *Johns. Rep.* 106, *and note; Moody* v. *Payne*, 2 *J. C. R.* 548. It certainly can make no difference that this property stood in the name of the complainant. It was partnership property. It very frequently happens that the real estate belonging to a partnership is in the name of one of the members of the firm; but the suggestion has never been made, that this circumstance will protect it from any attachment or execution against one of the partners for his separate debt.

A different objection is made to the attachment in favor of George Bliss. This attachment was levied upon the surplus money remaining in the hands of the sheriff, after he paid over to the complainant in the decree the amount due him, and which the sheriff was ordered, by his writ, to bring into court. In the case of *Shinn* v. *Zimmerman*, 3 *Zab.* 150, it was decided that money due on a judgment recovered in a court of record, either in this state or another state, cannot be attached in the hands of the defendant in such judgment on an attachment against the plaintiff therein. The *Chief Justice*, in delivering the opinion of the court, says—"Nor can money paid into court or to the sheriff be attached, while in the hands of the officer, upon considerations of public policy," and he refers to *Com. Dig., Attachment D; Ross* v. *Clarke*, 1 *Dall. R.* 354. The *Chief Justice* merely meant to lay down the principle, as established by the authorities to which he referred. It will be found, on an examination of the authorities, that the principle upon which they are decided does not apply to money in court, or in the hands of its

officers, under the circumstances of the present case. This is not like money paid into court under a decree or judgment of a court, and, by that decree or judgment, decided to belong to a particular individual. There is no decree of the court determining that this money belongs to Horace Andrews. It was not brought into court, or paid into court for his benefit, but it was brought here because it had not been ascertained to whom it belonged, and to await the future adjudication of the court as to its ownership. In *Comyn's Digest*, in enumerating what may not be attached, it is said merely—"nor money levied in execution by the sheriff upon a *fieri facias.*" And upon reference to the authorities cited by the author, it will be seen upon what principle the text rests. In *Floud and Sir John Parrott's case*, § 30, the court declared that money due upon a judgment in favor of Floud against Parrott could not be attached in the hands of the Parrotts. The court say—"Yet the law is clear, that judgments given in the courts of the king ought not, nor cannot by such particular customs, be defeated and avoided. As it was lately adjudged in a western case, damages were recovered, the sheriff, by virtue of *fieri facias*, levied the money, which one to whom the plaintiff was indebted did attach, by the custom, in the hands of the sheriff; but it was adjudged the attachment was not good, for the custom of attachment cannot reach upon a thing of so high a nature as a record." To the same effect is *Bracebridge's case*, § 264. The decision is put upon the ground, that the court will see that its own judgment is executed; and where, by its solemn record, the money is declared to belong to a particular person, the court will not permit that record to be interfered with. The case of *Ross* v. *Clarke*, 1 *Dall.* 354, goes no further. But here there is no interference with the decree of the court. Andrews cannot appeal to the record of this court as his protection. The money was not raised by the authority of the court for his benefit. It cannot be suggested, that there are any considerations of public policy which should induce the court to protect

money paid into court, under such circumstances, from attachment.

It is the policy of modern legislation to facilitate the creditor in reaching the property of his debtor. It is admitted that the language of the statute is broad enough to embrace even money paid into court as the property of a plaintiff in a judgment. The courts have protected such property, not on the ground that it was not embraced in the language and meaning of the statute, but simply because, in their judgment, such property should be protected from the operation of the statute upon considerations of public policy.

I think this money may be attached, and that the court should protect the lien which has thus been acquired.